UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEAUTY MANUFACTURING | ) | |
| SOLUTIONS CORP., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:10-CV-2638-G |
| | ) | |
| ASHLAND, INC. d/b/a ASHLAND | ) | |
| DISTRIBUTION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are cross-motions for summary judgment filed by the plaintiff,

Beauty Manufacturing Solutions Corporation ("Beauty Manufacturing") (docket

entry 14), and the defendant, Ashland, Inc. ("Ashland") (docket entry 56).[1] For the

reasons set forth below, both motions are denied.

---

[1] The plaintiff has filed a motion to strike portions of the defendant's
summary judgment evidence (docket entry 43), and the defendant has filed a motion
to strike the plaintiff's reply appendix, or in the alternative, a motion for leave to file
a surreply and supporting appendix (docket entry 48). Both of these motions are
**DENIED** as moot.

I.  <u>BACKGROUND</u>

A.  <u>Factual Background</u>

This is a contract dispute.  Beauty Manufacturing manufactures a creme-to-powder product ("the product") for Mary Kay Inc. ("Mary Kay").  Plaintiff Beauty Manufacturing Solutions Corp.'s Brief in Support of its Motion for Summary Judgment ("Plaintiff's Brief") at 2 (docket entry 15).  Ashland is a distributor of Dow Corning Corporation ("Dow Corning") products.  Defendant Ashland, Inc.'s Brief in Support of Response to Plaintiff Beauty Manufacturing Solutions, Corp.'s Motion for Summary Judgment ("Defendant's Brief") at 1 (docket entry 31).

Beauty Manufacturing and Ashland entered into a series of sale contracts concerning a necessary ingredient for the manufacture of the product.  Plaintiff's Brief at 2.  The chemical name of the ingredient that Beauty Manufacturing sought to purchase is Dimethicone/Trimethylsiloxysilicate ("Dimeth").  Defendant's Brief at 5.  However, due to some confusion, Beauty Manufacturing actually received Cyclopentasiloxane/Trimethylsiloxysilicate ("Cyclo").  *Id*.  As a result, Beauty Manufacturing used the wrong ingredient in the manufacture of the product.  Plaintiff's Brief at 9-10.  The plaintiff now brings this suit against Ashland to recover damages for the injury it suffered from this mixup.  *Id.* at 10.

In 2007, Beauty Manufacturing agreed to manufacture the product for Mary Kay.  Defendant's Brief at 3.  On July 6, 2007, Beauty Manufacturing contacted Dow

Corning and asked for pricing information on Dimeth.  *See* Appendix to Defendant

Ashland, Inc.'s Brief in Support of its Response to Plaintiff Beauty Manufacturing

Solutions, Corp.'s Motion for Summary Judgment ("Defendant's Brief's Appendix")

at 4 (docket entry 31-1) (filed under seal).  In this e-mail, Beauty Manufacturing

referred to Dimeth with its full chemical name, as well as Mary Kay item number

50056600.  *Id*. (filed under seal).  On July 11, 2007, Mary Kay notified Dow Corning

that Beauty Manufacturing was authorized to purchase Dimeth at Mary Kay's

contracted price.  *Id*. at 3 (filed under seal).  In this e-mail authorization, Mary Kay

noted that the "Mary Kay Part Number" for Dimeth is 50056600.  *Id*. (filed under

seal).

However, in an internal e-mail between two Dow Corning employees, one

mistakenly wrote that Beauty Manufacturing needed "DC 749 Fluid," which is the

Dow Corning trade name for Cyclo.  *Id*. at 7 (filed under seal).  As a result, Dow

Corning wrote an e-mail to Ashland, which stated that Beauty wanted "DC 749

Fluid."  *Id*. at 8 (filed under seal).

Between July 2007 and December 2008, Beauty Manufacturing ordered

approximately 24 drums of the ingredient from Ashland.  Plaintiff's Brief at 2.  To

make an order, Beauty Manufacturing would submit a written purchase order to

Ashland, which listed "an abbreviation of the full chemical name

[Dimethico/Trimethyl], the Mary Kay item number [50056600], and the Plaintiff's

- 3 -

item number [113526]" for Dimeth.  *Id*. at 2-3; *see, e.g.*, Appendix to Plaintiff Beauty

Manufacturing Solutions Corp.'s Brief in Support of its Motion for Summary

Judgment ("Plaintiff's Appendix") at 70 (docket entry 16).  Beauty Manufacturing

never used the trade name (DC 593) in its orders.  Plaintiff's Brief at 3.  After each

purchase order was submitted, Ashland would send the plaintiff an order

confirmation, which identified the ingredient with the plaintiff's item number

(113526) and the Dow Corning trade name for Cyclo (DC 749).  *Id*.; *see, e.g.*,

Plaintiff's Appendix at 61.  Ashland would then ship drums of Cyclo, not Dimeth,

and send an invoice.  Plaintiff's Brief at 9.  The invoices sent by the defendant also

contained the plaintiff's item number (113526) and the Dow Corning trade name for

Cyclo (DC 749).  *Id*. at 3-4; *see, e.g.*, Plaintiff's Appendix at 71.

    In early 2009, having received complaints from Mary Kay about the product,

Beauty Manufacturing realized that it had been wrongly using Cyclo, instead of

Dimeth, in the manufacture of the product.  Plaintiff's Brief at 9.  This caused Beauty

Manufacturing to suffer significant losses.  *Id*. at 10.

## B.  Procedural Background

    In 2010, Beauty Manufacturing brought this case against Ashland in a Texas

state court.  On December 28, 2010, Ashland removed the case to this court.  Beauty

Manufacturing filed its amended complaint on May 10, 2011.  Plaintiff Beauty

Manufacturing Solutions Corp.'s First Amended Original Complaint ("Complaint") at

1 (docket entry 9).  In its complaint, the plaintiff alleges claims against the defendant for breach of contract, breach of warranty, and violations of the Texas Deceptive Trade Practices Act ("DTPA").  *Id*. ¶¶ 10-15.

Both parties have moved for summary judgment.  Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), (c)(1).[2] A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to

---

[2]        Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

support the resolution of the material factual issues in its favor.  *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact.  See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara*, 353 F.3d at 405.

## II.  ANALYSIS

Beauty Manufacturing has brought claims against Ashland for breach of contract, breach of warranty, and violations of the DTPA.  Both parties argue that they are entitled to summary judgment on each of these three claims.

Because the court's jurisdiction in this case in based on the parties' diverse citizenship, Texas state substantive law applies.  *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938).

## A.  Breach of Contract

### 1.  *Ashland's Obligations Under the Contract*

In Texas, there are four essential elements to a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.--Houston [14th Dist.] 2005, *pet. denied*)).  Contracts that deal with the sale of goods are governed by the Uniform Commercial Code ("UCC"), which has been adopted by the state of Texas in its Business and Commercial Code.  *See* TEX. BUS. & COM. CODE § 2.102, *et seq.*  Because the ingredient sold by Ashland are "things . . . which are movable at the time of identification to the contract for sale," *id*. § 2.105(a), the UCC applies in this case.

Under Section 2.206(a)(2), "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods."  A seller delivers conforming goods when the goods "are in

accordance with the obligations under the contract." *Id*. § 2.106(b). "The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." *Id*. § 2.301.

To determine whether a seller delivered conforming goods, and thus fulfilled its obligations under the contract, a court must determine what the seller's obligations under the contract were. Under Section 2.202, "[t]erms with respect to which the confirmatory memoranda of the parties agree . . . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." However, when "the confirmatory memoranda of the parties" do not agree, courts can look outside the contract to interpret its terms. See *id*. Moreover, even when the "confirmatory memoranda of the parties" do agree, those terms can "be explained or supplemented" using evidence of "course of performance, course of dealing, or usage of trade." *Id*. § 2.202(1).

In this case, the parties dispute what Ashland's obligations were under the contracts. Beauty Manufacturing argues that the contract was for Dimeth, not Cyclo. Plaintiff's Brief at 13. Because Ashland shipped Cyclo instead, Beauty argues that Ashland breached the contract. *Id*. In support of this contention, Beauty Manufacturing points to its purchase orders, which refer to the ingredient requested with the chemical name's abbreviation ("Dimethico/Trimethyl"), the Mary Kay item number (50056600), and the plaintiff's own item number (113526). *Id.* at 3.

Furthermore, Beauty Manufacturing notes that it "never used the Dow Corning trade name for the Ingredient on its purchase orders." *Id*.

Ashland argues, on the other hand, that Beauty Manufacturing actually requested Cyclo, and not Dimeth. Ashland maintains that it was "instructed by both [Beauty Manufacturing] and Dow Corning that DC 749 Fluid . . . was one of the ingredients that [Beauty Manufacturing] would purchase from Ashland to manufacture the Product." Defendant's Brief at 1. Furthermore, Ashland avers that Beauty Manufacturing "requested a price quote for DC 749 and specifically instructed Ashland to assign the item number 113526 . . . to DC 749 so that Ashland's system would recognize BMSC's Item number when it processed BMSC's purchase orders." *Id*.

Beauty Manufacturing argues that the court should ignore Ashland's evidence as parol evidence inadmissible under Section 2.202. In particular, Beauty Manufacturing states that this evidence contradicts the "clear contract terms" of its purchase orders. Plaintiff Beauty Manufacturing Solutions Corp.'s Reply in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Reply") at 1 (docket entry 41).

However, the court concludes that Ashland's evidence that the contract was for Cyclo, and not Dimeth, is admissible under the exceptions to the parol evidence rule in Section 2.202. First, "the confirmatory memoranda of the parties" do not agree on

which ingredient Ashland was supposed to ship to Beauty Manufacturing.  *See* TEX.

BUS. & COM. CODE § 2.202.  Beauty Manufacturing's purchase orders clearly

referenced Dimeth by requesting "Dimethico/Trimethyl" and Mary Kay item number

"5005600."  *See*, *e.g.*, Plaintiff's Appendix at 70.  Meanwhile, Ashland's confirmations

and invoices clearly reference Cyclo with the Dow Corning trade name DC 749.

However, both parties memoranda use the number "113526."  *See*, *e.g.*, *id*. at 61, 71.

Beauty Manufacturing contends that 113526 is its internal item number for Dimeth,

while Ashland asserts that Beauty Manufacturing told Ashland that 113526 refers to

Cyclo.  Because of this disagreement, the court may consider parol evidence to

determine Ashland's obligations under the contract.

Second, evidence of "course of performance" or "course of dealing" is

admissible to explain or supplement the terms of a contract.  TEX. BUS. & COM. CODE

§2.202(1).  In this case, because there is a dispute over the express terms of the

contract -- *i.e.*, what 113526 means -- the court may look to the parties' conduct to

determine the content of the contract.  Because Beauty Manufacturing accepted

Cyclo, and not Dimeth, this parol evidence is admissible to explain which ingredient

was the subject of the contract.

Consequently, there is a disputed question of material fact as to what

ingredient the parties agreed to buy and sell in their contract.  Such a disputed

question of material fact precludes summary judgment for either party on the breach

of contract claim.

### 2. *Beauty Manufacturing's Acceptance of Cyclo*

There is a split of authority among state and federal courts in Texas as to the

remedies available to a buyer that has accepted goods from a seller.  Some courts hold

that "[o]nce a buyer accepts the goods and can no longer revoke that acceptance, he

is limited to recovering under § 2.714 of the UCC for breach of warranty if the goods

are defective or non-conforming."  *United Galvanizing, Inc. v. Imperial Zinc Corporation*,

No. H-08-0551, 2011 WL 11185, at *9 (S.D. Tex. Jan. 3, 2011); see also *A.O. Smith*

*Corporation v. Elbi S.P.A.*, 123 Fed. Appx. 617, 619 (5th Cir. 2005) (quoting *Ellis v.*

*Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 897 (Tex. App.--Houston [1st Dist.]

2002, *no pet.*) ("Under the [UCC], breach of contract damages are available for failure

to perform, but not for delivery of nonconforming goods . . . [There is] a definitive

distinction between failure to conform and failure to deliver."))).  In contrast, other

courts have recently held that a breach of contract remedy is not foreclosed when "the

seller delivers and buyer accepts but later discovers that the goods are defective or

non-conforming."  See *Contractor's Source, Inc. v. Hanes Companies, Inc.*, No. 09-CV-

0069, 2009 WL 6443116, at *5-6 (S.D. Tex. Dec. 29, 2009) (citing *Morgan Buildings*

*and Spas, Inc. v. Humane Society of Southeast Texas*, 249 S.W.3d 480, 491 (Tex. App.--

Beumont 2008, *no pet*)).

After reviewing the relevant statutory and case law, the court concludes that a buyer can bring a breach of contract claim, even if the buyer has full accepted goods from the seller.  As the court in *Contractor's Source* explains, "[t]he text of Section 2.714 strongly suggests that non-conformity may constitute a breach of warranty *and* a breach of contract."  *Id*. at *6 (emphasis in original).  Section 2.714(a) states that "[w]here the buyer has accepted goods . . . he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable."  The official comments to Section 2.714 state that "[t]he 'non-conformity' referred to in [Section 2.714(a)] includes not only breaches of warranties but also any failure of the seller to perform according to his obligations under the contract."  Moreover, "Section 2.711 states that, in the event of a breach, a buyer may 'justifiably revoke acceptance,' thereby implying that breach of contract remedies may exist even after acceptance of goods."  *Contractor's Source*, 2009 WL 6443116 at *6.  As a result, the court adopts the reasoning in *Contractor's Source*:

> [W]here the non-conformity alleged relates to the specific obligations of the seller under the terms of the contractual agreement, the buyer's remedies fall primarily under a breach of contract claim. If, however, the non-conformity arises solely from the seller's express or implied warranties outside of its contractual obligations, or from generally defective goods, the buyer's sole remedy is for breach of warranty.

*Id.*

In this case, Ashland argues that Beauty Manufacturing is not entitled to bring a breach of contract claim, because it fully accepted the goods that Ashland delivered. It is undisputed that Beauty Manufacturing did accept the Cyclo that Ashland delivered.  *See* Plaintiff's Reply Brief at 15.  This fact alone, however, does not bar a breach of contract claim by Beauty Manufacturing.  See *Contractor's Source*, 2009 WL 6443116 at *6.

### 3. *Beauty Manufacturing's Notification of a Breach by Ashland*

Under Section 2.607(c)(1), when a buyer has accepted a tender of goods, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  Furthermore, "[t]he burden is on the buyer to establish any breach with respect to the goods accepted." *Id*. § 2.607(d).

In this case, the parties dispute whether Beauty Manufacturing notified Ashland of the alleged breach "within a reasonable time" after Beauty Manufacturing "should have discovered any breach" by Ashland.  The parties do not appear to dispute that Beauty Manufacturing notified Ashland immediately after it did in fact discover that it had been wrongly using Cyclo in the manufacture of the product. Instead, the principal question is whether Beauty Manufacturing should have discovered Ashland's alleged breach sooner than it did.

Beauty Manufacturing argues that it has met its obligations under Section 2.607(c) because it "notified Defendant of its breach in February 2009, immediately upon discovering that the incorrect ingredient had been shipped." Plaintiff's Brief at 14. In contrast, Ashland argues that Beauty Manufacturing "should have discovered" the breach at a point earlier than February 2009. Defendant's Brief at 16. In particular, Ashland argues that Beauty Manufacturing should have realized it was using the wrong ingredient when it received Ashland's confirmations, received the drums that contained the wrong ingredient, reviewed the documentation that was with each shipment, or during manufacture of the defective product. *Id.*

Because the parties dispute this question of material fact, the court cannot grant summary judgment to either part on the plaintiff's breach of contract claim.

### B. Breach of Warranty

To make out a claim for a breach of warranty, a buyer must establish each of the following five elements:

> 1) an affirmation or promise made by the seller to the buyer; 2) that such affirmation or promise was part of the basis for the bargain, *e.g.*, that the buyer relied on such affirmation or promise in making the purchase; 3) that the goods failed to comply with the affirmation or promise; 4) that there was financial injury; and 5) that the failure to comply was the proximate cause of the financial injury to the buyer.

*Lindemann v. Eli Lilly and Company*, 816 F.2d 199, 202 (5th Cir. 1987) (citing *General Supply & Equipment Company v. Phillips*, 490 S.W.2d 913, 917 (Tex. Civ. App.--Tyler 1972, *writ ref'd n.r.e.*); *see also* TEX. BUS. & COM. CODE § 2.313.

In this case, the parties dispute whether Ashland has breached an express warranty. Beauty Manufacturing argues that Ashland made an "affirmation or promise" that it would ship Dimeth "by describing the product using Plaintiff's item number, 113526, on each of the order confirmations." Plaintiff's Brief at 15. By shipping Cylco instead, Beauty Manufacturing argues, Ashland breached this express warranty. *Id*. at 16. For its part, Ashland argues that its "affirmation or promise" was to ship Cyclo, and because it did ship Cyclo to Beauty Manufacturing, it did not breach any warranty. Defendant's Brief at 15-16.

Because there is a dispute of material fact as to what Ashland affirmed or promised to Beauty Manufacturing, the court cannot grant summary judgment for either party on the plaintiff's warranty claim.

## C. Texas Deceptive Trade Practices Act

Finally, Beauty Manufacturing has brought claims against Ashland under the Texas Deceptive Trade Practices Act ("DTPA"). TEX. BUS. & COM. CODE §§ 17.41-63. In particular, Beauty Manufacturing claims Ashland: (1) breached "an express warranty" under Section 17.50(a)(2); (2) misrepresented the "characteristics" and "uses" of the ingredient, under Section 17.46(b)(5); and (3) misrepresented that the

ingredient provided was of the "style" requested, under Section 17.46(b)(7).

Complaint ¶ 15.

In this case, because there are disputes of material fact, this court cannot grant summary judgment for either party on any of the plaintiff's claims under the DTPA. Plaintiff's claim under Section 17.50(a)(2) for breach of an express warranty is analyzed in the same fashion as plaintiff's claim under TEX. BUS. & COM. CODE § 2.313.  See *supra* Section II.B.  Moreover, Beauty Manufacturing's claims that Ashland "misrepresented" the ingredient shipped are contingent on the meaning of the 113526 number that Ashland placed on its confirmations and invoices.  Because the parties disagree about the meaning that they assigned to this number, there is a genuine dispute of material fact which cannot be resolved on this motion.

### III.  CONCLUSION

For the reasons set forth above, the plaintiff's and defendant's motions for summary judgment are **DENIED**.

**SO ORDERED**.

December 15, 2011.

A. JOE FISH
**Senior United States District Judge**

- 16 -